**Patricia PEDELAHORE, wife of/and
Norman Pedelahore,
Plaintiffs-Appellants,**

v.

**ASTROPARK, INC., Defendant-Appellee.**

**No. 83–3697.**

United States Court of Appeals,
Fifth Circuit.

Nov. 2, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 28, 1984.

Badeaux, Discon, Cumberland & Sherman, John G. Discon, J. Michael Cumberland, New Orleans, La., for plaintiffs-appellants.

Christovich & Kearney, Michael M. Christovich, W.K. Christovich, New Orleans, La., for defendant-appellee.

Before POLITZ, WILLIAMS and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

Patricia Pedelahore, a Louisiana resident, was injured on a ride at Astroworld, an amusement park in Houston, Texas, owned and operated by Astropark, Inc., a Delaware corporation authorized to do business in Texas. Pedelahore and her husband invoked diversity jurisdiction and filed suit in the district court for the Eastern District of Louisiana. Astropark challenged the court's in personam jurisdiction. The district court found personal jurisdiction lacking and dismissed the suit. Concluding that the district court has personal jurisdiction over the Pedelahores' claims against Astropark, Inc. under the Louisiana long-arm statute, La.R.S. 13:3201, we reverse and remand.

The sole question posed on appeal is whether the federal court *a qua* had personal jurisdiction over the nonresident Astropark, Inc. Whether personal jurisdiction exists is generally determined by examining the: "(1) assertion of jurisdiction by the law of the forum; (2) conformity of the law with the Constitution; and (3) authority for the means of service of process. The first two tests determine a defendant's amenability to jurisdiction ... the third ... gauges whether that amenability was as-serted through the proper means." *Lapeyrouse v. Texaco, Inc.*, 693 F.2d 581, 584–85 (5th Cir.1982). As we capsulated in *Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1211 (5th Cir.1975):

> Resolution of the issue whether a state may properly assert in personam jurisdiction over a nonresident defendant involves a dual inquiry. [Citation omitted.] The first question is whether the state has by statute provided for the assertion of jurisdiction in the context of the situation under scrutiny. Assuming the initial inquiry is answered affirmatively, the question then arises whether the assertion of jurisdiction is constitutionally permissible.

A defendant is amenable to the personal jurisdiction of a federal court sitting pursuant to diversity jurisdiction to the same extent that he would be amenable to such jurisdiction in a state court of the forum. *Lapeyrouse.* This amenability involves inquiries one and two posed above. Applying state law, the court must first determine whether the forum state would assert long-arm jurisdiction. *Lapeyrouse; Terry v. Raymond International, Inc.*, 658 F.2d 398 (5th Cir.1981), *rehearing and rehearing en banc denied*, 667 F.2d 92 (5th Cir.), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982). The court must then determine that the exercise of personal jurisdiction over the nonresident is consonant with "traditional notions of fair play and substantial justice" and that the nonresident defendant had sufficient "minimal contacts" with the forum state so as to avoid offending the due process clause of the fourteenth amendment. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Lapeyrouse* and cases cited therein.

### Scope of the Louisiana statute

The Louisiana long-arm statute, La.R.S. 13:3201, provides:

A court may exercise personal jurisdiction over a nonresident, who acts directly

or by an agent, as to a cause of action arising from the nonresident's

(a) transacting any business in this state;

(b) contracting to supply services or things in this state;

(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) having an interest in, using or possessing a real right or immovable property in this state;

(f) non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state; or

(g) parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

■ Astropark maintains that the Louisiana statute is more stringent and embraces less than the limits allowed by the due process clause. We do not agree. This court and the Louisiana Supreme Court have consistently held that the Louisiana long-arm statute extends to the maximum limits permitted by due process. *See e.g. Burstein v. State Bar of California*, 693 F.2d 511 (5th Cir.1982); *Quasha v. Shale Development Corp.*, 667 F.2d 483 (5th Cir. 1982); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5th Cir.1980); *Adcock v. Surety Research and Inv. Corp.*, 344 So.2d 969 (La.1977); *Drilling Engineering, Inc. v. Independent Indonesian Am. Petroleum Co.*, 283 So.2d 687 (La.1973). This conclusion is consistent with the official comments appended to the statute by the Louisiana State Law Institute in 1964:

R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

■ As noted, due process advances a two-pronged test: (1) the nonresident must have minimal contacts with the forum, and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play. *Product Promotions v. Cousteau*, 495 F.2d 483 (5th Cir.1974). Astropark contends that the Louisiana statute requires more, arguing that there must be a causal nexus between the minimal contact in Louisiana and the incident giving rise to the action. In support of this contention Astropark cited to the district court and now cites to us two cases—*Bernhard v. Holiday Travels*, No. CO914 (La.App. 4th Cir. Aug. 10, 1983); and *Rush v. Matson Navigation Co.*, 221 So.2d 265 (La. App. 2d Cir.1969). We do not find these citations persuasive. The *Bernhard* case has not been reported; apparently the court did not select it for publication. And *Rush* does not represent the current position of Louisiana's Second Circuit Court of Appeal. That court has discarded the three-pronged test and its rulings are now consistent with Louisiana's other intermediate appellate courts, the Louisiana Supreme Court, and this court. *See U.S. Fidelity v. Hi-Tower Concrete Pumping*, 434 So.2d 506 (La.App. 2d Cir.1983). We therefore conclude that under the Louisiana long-arm statute there need not be a causal relationship between the nonresident's contacts within the state and the incident giving rise to the action. Louisiana law does not require the causal connexity, nor does federal due process. *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir.1977), where, as the Supreme Court recently stated, the contacts are "continuous and systematic", Helicopteros Nacionales de Columbia, S.A. v. Hall, ___ U.S. ___, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1948). The contacts of Astropark within the State of Louisiana were patently continuous and systematic.

The final and most difficult inquiry presented by this appeal is whether subjecting Astropark to in personam jurisdiction in Louisiana is constitutionally permissible under the operative facts. Upon close examination we conclude and hold that valid personal jurisdiction exists.

What are the minimum contacts between Astropark and the people and State of Louisiana? Pedelahore points to the following actions by Astropark:

(1) An advertising program aimed at Louisianians, including the distribution of brochures and thousands of radio and television spots, together with advertisements in local, national, and regional publications, all extolling the wonders of Astroworld and encouraging visitors to attend.

(2) A ticket consignment agreement with all Louisiana travel agencies authorizing those agencies to sell Louisiana residents tickets to Astropark's facilities.

(3) The conducting of a three-day seminar in New Orleans in December 1982 by the Astropark Marketing Department, aimed, *inter alia*, at developing business from Louisiana for the Houston operation.

(4) The appointment of a sales representative with Louisiana as her area of responsibility.

To these active steps by Astropark, Pedelahore adds the results of the efforts. During the years 1981, 1982 and 1983, Louisiana accounted for 10.3%, 9.7%, and 8.0%, respectively, of the total patronage at the amusement park. Only one state, Texas, accounted for more patrons.

In *Wilkerson v. Fortuna Corp.*, we examined the Texas long-arm statute as it applied to a resident of New Mexico for an operation in New Mexico. We there held that an intensive advertising campaign aimed at enticing Texas patronage constituted sufficient minimal contacts to meet the due process threshold. We are persuaded that the same applies here. Astropark actively advertised in Louisiana, using radio, television and the print media. Louisiana was targeted, a sales representative for Louisiana was appointed, all travel agencies were contacted and authorized to act for Astropark. The advertisements were obviously planned. They were successful as attested to by the significant numbers of Louisiana customers. We find adequate minimal contacts reflected in this record.

The final inquiry asks whether it would be fair, just, and reasonable to require Astropark to defend itself in Louisiana courts for the imposition of jurisdiction must not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. One factor which weighs heavily in this calculus is Louisiana's "interest in providing effective means of redress for its residents." *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. The targeted solicitation of Louisiana residents, together with the substantial number of Louisiana patrons support Louisiana's legitimate interest in providing its citizens with reasonable access for redress. The countervailing consideration is whether it is fair to require Astropark to defend itself in courts sitting in Louisiana. It is not unfair to require such if Astropark engaged in activities that will "support an inference that [it] purposefully availed [itself] of the benefits of conducting business in [Louisiana]." *Standard Fittings*, 625 F.2d at 643. *See also Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

As we observed in *Products Promotions*, 495 F.2d at 496:

even if the defendant performs no physical act within the State, activities outside the State can provide adequate contacts if they have reasonably foreseeable consequences within the State .... The operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.

*See also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Astropark's contacts with Louisiana were deliberate, not fortuitous, and

it was reasonably foreseeable, if not foreseen, that accidents would happen and Louisianians would sustain injuries as a consequence of tortious conduct involving employees or equipment. We perceive no unfairness or undue burden placed on Astropark by requiring the defense of the Pedelahore suit in Louisiana. Astropark does not suggest otherwise.

We conclude and hold that the constitutional requirements are satisfied, that the Louisiana long-arm statute reaches Astropark in the setting here presented, and that the district court has personal jurisdiction over Astropark.

REVERSED and REMANDED for further proceedings consistent herewith.