**MMR HOLDING CORPORATION**

v.

**Willard M. SWEETSER, Jr.**

Civ. A. No. 87–110–B.

United States District Court,
M.D. Louisiana.

Dec. 3, 1987.

Michael D. Hunt, Timothy E. Kelley, Phleps, Dunbar, Marks, Claverie & Sims, Baton Rouge, La., for plaintiff.

Kelly W. Wilkinson, Michael H. Rubin, Rubin, Curry, Colvin & Joseph, Baton Rouge, for defendant.

POLOZOLA, District Judge.

This suit arises out of an employment contract dated June 25, 1986, between MMR Holding Corporation ("MMR"), a Delaware corporation with its principal place of business in Louisiana, and Willard M. Sweetser, Jr. ("Sweetser"), a Virginia resident. Under the "agreement" Sweetser was hired as president of MMR's "Foley Group Division" which was headquartered in Virginia. The agreement provided, *inter alia*, that if Sweetser was discharged during the term of the agreement without "substantial and material justification," he would be due certain severance payments from MMR. The contract further provided that any claims arising out of or related to the agreement were to be submitted for resolution to the American Arbitration Association ("AAA").

On December 3, 1986, MMR terminated Sweetser's employment. Sweetser filed a demand for arbitration with the Washington, D.C. region of the AAA on January 30, 1987. On February 10, 1987, MMR filed suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana seeking recision of the employment contract, damages, declaratory and injunctive relief. Sweetser timely re-

moved this action to this court asserting diversity jurisdiction under 28 U.S.C. § 1332.

The defendant has now filed a motion to dismiss asserting that this court lacks *in personam* jurisdiction over him. In the alternative, defendant seeks to have this suit transferred to a more convenient forum or, in the alternative, to stay pending arbitration.[1]

From October 1984 until June 24, 1986, Sweetser was employed as president of Howard P. Foley Enterprises, Inc. ("Foley Enterprises"), a District of Columbia corporation with its principal place of business in Alexandria, Virginia. Foley Enterprises operated an electrical and mechanical contracting business which performed contracts located in various states. From April 1985 to June 24, 1986, Sweeter maintained his office at Foley Enterpries headquarters in Alexandria, Virginia. In approximately early May of 1986, Foley Enterprises became financially unable to perform its obligations under then outstanding construction contracts. Thereafter, Foley Enterprises filed for bankruptcy.

After extensive negotiations were undertaken, a "Completion Agreement" dated June 16, 1986, was entered into between MMR and Foley Enterprises' bonding company. Pursuant to this Completion Agreement, MMR undertook to complete approximately eighty to one hundred of Foley Enterprises' construction projects, only one of which was located in Louisiana.

Sweetser was then employed as president of a new unit within MMR which was named the Foley Group Division. This unit was created to perform the contracts undertaken by MMR under the Completion Agreement. From June 25, 1986 until December 3, 1986, Sweetser served as president of the Foley Group Division of MMR. On December 2, 1986, Sweetser was terminated as an employee of MMR.

The first issue the court must determine is whether Sweetser has sufficient contacts with the state of Louisiana in order for the

court to have personal jurisdiction over him. Plaintiffs seek to establish personal jurisdiction over the defendant under the Louisiana Long Arm Statute, La.R.S. 13:3201, which provides in pertinent part:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action, arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

A two-step inquiry is necessary to determine whether a state's long arm statute confers jurisdiction over a nonresident defendant in a federal diversity action. The court must first determine whether the state statute provides a basis for jurisdiction. If the requirements of the state statute have been met, the court must then ascertain whether assertion of jurisdiction over the defendant complies with federal due process requirements. *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1083 (5th Cir.1984).

Sweetser contends that there is neither a statutory nor constitutional basis for the assertion of personal jurisdiction over him. Defendant argues that this "cause of action" did not arise from the "transacting of any business *in* Louisiana," nor from the "contracting to supply services *in* Louisiana" as required by the statutory language of La.R.S. 13:3201. (emphasis supplied)

Plaintiffs, however, assert that the Louisiana long arm statute has been consistently interpreted to extend to the maximum limits permitted by due process. *Pedelahoe v. Astropark, Inc.*, 745 F.2d 346 (5th Cir.1984). This interpretation was based on the official comments of the redactors of the long arm statute. Plaintiffs contend the inquiry is narrowed to whether the defendant has sufficient contacts with the state so that the exercise of jurisdiction

---

1. Plaintiff also has a pending motion for a preliminary injunction. This motion will not be    considered in this opinion.

would not offend traditional notions of fair play and substantial justice. *Id.*

The Fifth Circuit recently certified to the Louisiana Supreme Court the question of whether La.R.S. 13:3201 requires a direct nexus between the business transacted in Louisiana by the nonresident defendant and the plaintiff's cause of action. *See Petroleum Helicopters, Inc. v. Avco Corporation,* 811 F.2d 922 (5th Cir.1987). The Louisiana legislature has also enacted legislation to amend R.S. 13:3201. 1987 La. Acts 418. This amendment provides in pertinent part:

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

In reply to the question certified by the Fifth Circuit Court of Appeals, the Louisiana Supreme Court stated:

The 1987 amendment was designed to ensure that the long-arm jurisdiction of a Louisiana court extends to the limits allowed by due process. See Official Comment Acts 1987, No. 418. When constitutional requirements of due process have been met (as the federal appellate court decided in this case), there is no longer a need to inquire into whether the defendant's conduct falls within the reach of the long-arm statute. Now, under the express wording of the present Louisiana Long-arm Statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long-arm statute. The limits of the Louisiana Long-arm Statute and the limits of constitutional due process are coextensive.

*Petroleum Helicopters, Inc. v. Avco Corporation, Inc.,* 513 So.2d 1188 (La.1987). The Louisiana Supreme Court also stated that the amendment was to be applied retroactively. *Id.*

Therefore, it is clear that for the court to have personal jurisdiction over the defendant, the court must determine whether the defendant purposely availed himself of the privilege of conducting business in Louisiana or that he invoked the benefits and protection of Louisiana law. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

MMR argues that Sweetser had numerous contacts with Louisiana which makes it fair and constitutional for the court to assert personal jurisdiction over the defendant. Plaintiff relies on the deposition of Sweetser, and the affidavits of James Ruthland, President of MMR; Samuel Weems, Chief Financial Officer of MMR; and Stephen Darnell, consultant for Fails Management Institute, Inc.

Plaintiff contends that Sweetser, acting through Stephen Darnell of the Fails Management Institute, marketed Foley Enterprises, of which Sweetser was then president, to several hundred of the larger electrical and mechanical contractors in the United States, including MMR. Plaintiff further alleges that James Rutland, president of MMR, was contacted several times in Louisiana regarding the sale of Foley Enterprises and was sent information concerning the proposed sale. Plaintiff attempts to characterize Sweetser's actions as the "solicitation" of MMR by Sweetser. Finally, MMR asserts that Sweetser's employment as chief executive officer of the Foley Group resulted directly from this "solicitation." Therefore, plaintiff argues that Sweeter's own actions subject him to the personal jurisdiction of this court.

A review of the record before the court refutes MMR's arguments. In his deposition, the president of MMR, James Rutland, clearly states that MMR made the initial contact with Foley Enterprises after MMR learned that Foley Enterprises had filed for bankruptcy. Thus, the court need not address the issue of whether any action of Fails Management Institute in the mar-

keting of Foley Enterprises may be personally attributed to Sweetser to subject him to personal jurisdiction in Louisiana.[2] The court will therefore first determine if it has specific jurisdiction over the defendant under the facts of this case.

In *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987), the Fifth Circuit set forth the standard to be applied in determining whether *in personam* jurisdiction can be properly asserted in a case. The court stated:

> When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising "specific jurisdiction." To exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. Even where specific jurisdiction is lacking, however, a court may nevertheless exercise "general jurisdiction" based on a defendant's contacts with the forum unrelated to the controversy. To exercise general jurisdiction, the court must determine whether "the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction."

*Id.* at 777 (citations omitted).

■ After reviewing Sweeter's contacts with Louisiana in this controversy, the court concludes that the contacts are insufficient to support an exercise of specific jurisdiction.

The Supreme Court in *Burger King, supra*, addressed the constitutional requirements in the context of interstate contractual obligations. In reaffirming its rejection of the notion that personal jurisdiction might turn on mechanical tests, the court noted:

> [W]e note a continued division among lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot ... Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."
> ... It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King*, 105 S.Ct. at 2185–86. (emphasis theirs)

The facts of this case reveal that Sweetser is a Virginia resident who entered into an employment contract with a corporation located in Louisiana. The principal terms of Sweetser's employment were negotiated in Virginia during the visits of James Rutland and Allen Boudreaux to Virginia. The final terms of the agreement were set forth in a written employment agreement which Sweetser signed in Washington, D.C. and Rutland executed in Louisiana. This agreement provides that the parties would be governed by the laws of Virginia. It also specified that Sweetser was to be employed "at the Foley Group's headquarters in the Greater Washington D.C. area" and "would not be required to move from the Greater Washington D.C. area without his prior written consent." During Sweetser's employment with MMR, the Foley Group Division was headquartered at the former

---

**2.** The court does note that Foley Enterprises, Inc. hired an outside consulting firm, Fails Management Institute, which did in turn send a "blind" letter to companies across the nation. However, the court finds that such an attenuated contact with the forum is not sufficient to subject the former president of Foley Enterprises, Willard M. Sweetser, Jr., to personal jurisdiction by this court.

Foley Enterprises offices in Virginia. Sweetser maintained his offices and residence in Virginia. With the exception of several trips to states other than Louisiana, Sweetser performed his duties under the employment agreement in Virginia. During his employment with MMR, Sweetser's contact with Louisiana was limited to making or receiving telephone calls and the exchange of correspondence. At no time during his employment with MMR did Sweetser visit Louisiana.

In determining whether Sweetser deliberately invoked the benefits and protection of Louisiana laws, the court must note that a nonresident may permissibly structure his primary conduct so as to avoid being haled into court in a particular state. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Supreme Court reiterated this principle in the context of interstate contractual obligations by observing:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign ... the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

Burger King, 105 S.Ct. at 2182 (citations and footnotes omitted).

It is clear that Sweetser and MMR contemplated from the outset that the performance of the parties' contract, particularly Sweetser's duties, was to be centered in Virginia. It is also clear that the defendant purposefully structured his conduct and the terms of the agreement so that he would not be liable to suit in Louisiana for any dispute arising from the employment agreement.

This court finds that the exchange of communication by the parties between Virginia and Louisiana during the course of developing and carrying out the employment contract is insufficient to constitute purposeful availment of the benefits and protections of the laws of Louisiana. Holt Oil and Gas Corp., 801 F.2d at 778. The court further finds that the mere fact that MMR maintains its corporate records in Louisiana, or that defendant's salary, medical benefits and an automobile were funded from MMR in Louisiana is insignificant in the court's determination of whether the defendant purposefully availed himself of the benefits and protection of Louisiana law. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404; Holt Oil & Gas, 801 F.2d at 778.

Therefore, the court concludes that there are insufficient contacts between Louisiana, Sweetser and this controversy to support an exercise of specific jurisdiction under the facts of this case.

The facts also fail to support the exercise of general jurisdiction in this case. One of the projects assumed by MMR was located in New Orleans, Louisiana. Sweetser had supervisory responsibility over that project. However, Sweetser did not travel to Louisiana to perform any supervisory functions in connection with this job. There is no indication in the record to support a conclusion that he would have been required to travel to Louisiana to supervise this job. It is important to note that this cause of action does not arise out of the New Orleans job. Thus, the court finds that this minor contact with Louisiana in conjunction with the other contacts with Louisiana involved in this controversy are not "sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790 (1984). Therefore, the court finds that the exercise of general jurisdiction under the facts of these facts is not proper.

In summary, the court finds that it cannot exercise in personam jurisdiction over the defendant Willard M. Sweetser, Jr. Therefore, defendant's motion to dismiss shall be granted. Because of the court's ruling, it is unnecessary for the court to rule on defendant's alternative motions, in-

cluding its motion to stay pending arbitration. The court shall withhold signing an order of dismissal to give the plaintiff ten (10) days to advise the court whether the plaintiff desires to have this case transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1631 rather than having the case dismissed.

Therefore:

IT IS ORDERED that the motion of Willard M. Sweetser, Jr. to dismiss be and it is hereby GRANTED. The court shall withhold entering a judgment of dismissal for ten (10) days.

IT IS FURTHER ORDERED that plaintiff shall inform the court within ten (10) days whether they would like to have the case transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1631 in lieu of dismissal.